IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

WILLIE MUNN                                                                    PLAINTIFF

V.                                    CIVIL NO. 4:11-cv-04085

SHERIFF BUTCH MORRIS; and
JANA TALLANT                                                             DEFENDANTS

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This is a civil rights action filed by Plaintiff, Willie Munn, pursuant to the provisions of
42 U.S.C. § 1983.  Plaintiff proceeds *pro se* and *in forma pauperis*.  Pursuant to the provisions of
28 U.S. C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District
Judge, referred this case to the undersigned for the purpose of making a report and
recommendation.

Currently before the Court is Separate Defendants' Motion for Summary Judgment (ECF
No. 63);  Brief in Support of Their Motion for Summary Judgment (ECF No. 64); and Statement
of Facts (ECF No. 65).  Plaintiff filed a response titled Response to Defendant's Motion for
Summary Judgment Objections (ECF No. 68) and a Brief in Support (ECF No. 69).  After
considering all of the briefing the undersigned makes the following Report and Recommendation.[1]

## I.      BACKGROUND

The events that are the subject of this lawsuit occurred while Plaintiff was incarcerated in

---

[1] The Court sent a Notice to Plaintiff on August 3, 2008 requesting he notify the Court
whether he would like the Court to aide him in responding to Separate Defendants' Motion for
Summary Judgment.  ECF No. 66.  Plaintiff responded that he would file his own response or
"[a]nswer a questionnaire if needed whatever pleases the Court."  ECF No. 70.  The Court finds
Plaintiff's Response and Brief in Support sufficient and therefore, did not propound a
questionnaire to Plaintiff.

the Howard County Detention Center ("HCDC") in Nashville, Arkansas.  Plaintiff alleges his

constitutional rights were violated when Separate Defendants, Sheriff Butch Morris ("Sheriff

Morris") and Administrator Jana Tallant ("Administrator Tallant") (collectively "Separate

Defendants"), denied him access to the courts, denied him medical care, denied him freedom to

exercise his religion, and subjected him to unconstitutional conditions of confinement.  ECF No.

1, pp. 4-5; ECF No. 6, pp. 2, 7.  As this case is before the Court on Separate Defendants' Motion

for Summary Judgment, the Court will assume the facts as alleged by Plaintiff, the non-moving

party, are true.  Plaintiff has brought this action against Separate Defendants in both their official

and individual capacities.  ECF No. 1, p. 2.

        Plaintiff was arrested and booked into the HCDC on June 2, 2011.[2]  ECF No. 69, p. 2.  He

posted bond and was released on June 30, 2011.  ECF No. 64, Exs. A, B.  Plaintiff was sentenced

in August 2011 and is currently incarcerated at the Arkansas Department of Corrections–Cummins

Unit in Grady, Arkansas ("ADC").  ECF No. 64, Ex. A.  Plaintiff filed the instant Complaint on

September 2, 2011.

        In his Complaint, Plaintiff specifically claims (1) Separate Defendants refused to take him

to his doctors appointments while he suffered, and they denied him medical care for thirty (30)

days; (2) Plaintiff suffered from blood in his stool ("bowels problem"), osteoarthritis, and gout

arthritis; (3) Separate Defendants told Plaintiff they would take him to have a colon test but would

not pay for the exam; (4) Separate Defendants refused him visits with a nurse because HCDC does

_____

        [2] Plaintiff originally alleged, in his Complaint, that he was arrested and booked into
HCDC on May 1, 2011.  ECF No. 1, p. 4.  However, in his Response he asserts he was arrested
and booked on June 2, 2011.  ECF No. 69, p. 2.  The June date comports with the booking
information sheet attached to Separate Defendants Brief in Support of Motion for Summary
Judgment.  ECF No. 64, Ex. A.

not have a nurse; (4) Separate Defendants refused him access to the law library because HCDC does not have a law library; (5) Separate Defendants refused Plaintiff a visit with the chaplain because HCDC does not have a chaplain (6) Separate Defendants deliberately placed Plaintiff in harms way by placing him in the same room as an inmate with tuberculosis and not performing tuberculosis test on inmates upon book-in.  ECF No. 1, pp. 4-6.  In a Brief in Support of Complaint (filed as a supplement to his Complaint on September 16, 2011), Plaintiff also claims (1) he was denied medical care; (2) the HCDC was not equipped with tuberculosis lights as required by state and federal law; (3) he was denied medication and doctors appointments "for several weeks;" (4) he was subjected to cruel and unusual punishment by sitting in jail for three weeks in pain; (5) Separate Defendants refused to take him to his appointment with "Collom & Carney Clinic-Urology" even though Plaintiff was bleeding from his rectum;[3] (6) Separate Defendants refused to pay for Plaintiff's medical treatment while he was in the HCDC; (7) Separate Defendants were deliberately indifferent to Plaintiff's medical needs by advising him to have his family go to the drug store, pay for, and bring him his medication; (8) there was no nurse on duty or sickcall at HCDC; (9) there is no law library at the HCDC; and (10) he was forced to sleep on the floor because of double bunking.[4]  ECF No. 6, pp. 2, 4, 6-7.

---

[3] Plaintiff only refers to "Collom & Carney Clinic-Urology" in his Brief in Support of Complaint.  All other references to the clinic where Plaintiff had a colon exam scheduled are to the Texarkana Gastroenterology Consultants.

[4] Plaintiff also alleges that his public defender and the prosecuting attorney violated his constitutional rights in relation to his criminal proceedings.  The Court previously addressed these issues by report and recommendation and such parties and claims were dismissed.  ECF No. 31.

## II.      LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party, *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251-2 (1986), and a fact is material if it affects the outcome of the case, i*d.* at 248.  The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial.  *See Anderson,* 477 U.S. at 256; *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).  The Court must view all evidence and inferences in a light most favorable to the nonmoving party.  *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012).  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## III.     DISCUSSION

Separate Defendants argue (1) Plaintiff's official capacity claims fail because he did not allege a custom or policy of Howard County which resulted in a violation of his constitutional rights; (2) Plaintiff's denial of medical care claim fails because he cannot show Separate Defendants were deliberately indifferent to his medical needs; (3) Plaintiff's access claim fails because he does not have the right to access a law library to assist his attorney in connection with criminal charges; and (4) Plaintiff's allegation that he was denied chaplain visits is not true, and

4

even if it were, Plaintiff did not show how this denial substantially burdened the practice of his religion.

### A.    Official and Individual Capacity Claims

Plaintiff claims Separate Defendants violated his constitutional rights in both their official and individual capacities.  Separate Defendants argue Plaintiff has failed to show that a policy or custom of Howard County was the moving force behind any alleged constitutional violations.

Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both.  In *Gorman v. Bartch,* 152 F.3d 907 (8th Cir.1998), the Eighth Circuit Court of Appeals ("Eighth Circuit") discussed the distinction between individual and official capacity suits.  As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available.  *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991).  Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself.  *Id.* 502 U.S. at 24–27, 112 S.Ct. at 361–62 (1991).  Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense.  *Id.* 502 U.S. at 25–27, 112 S.Ct. at 362.

*Gorman,* 152 F.3d at 914.

In his Response, Plaintiff attaches sections of the HCDC Policy and Procedure Manual regarding the sick call procedures; exercise procedures; privilege deprivation procedures; detainee intake, custody and release procedures; grievance procedures; and emergency health care procedures.  ECF No. 69. pp. 2-9.  The only policies submitted by Plaintiff that relate to his claims in this matter are those related to sick call procedures; emergency health care procedures; and

5

detainee intake, custody and release procedures.  Plaintiff has not made a claim in his Complaint or Brief in Support related to the HCDC exercise procedures; privilege deprivation procedures; or grievance procedures.

While Plaintiff did not attach these policies of HCDC to his Complaint or Brief in Support of Complaint, he did state that he was suing Separate Defendants in both their official and individual capacities and did challenge the HCDC policies of not employing a nurse or having a sick call; not testing for Tuberculosis upon admittance to the HCDC; not having tuberculosis lights; housing Plaintiff with a tuberculosis infected inmate; and double bunking.  ECF No. 1, pp. 4; ECF No. 6, p. 2.   *Pro se* pleadings should be liberally construed and held to less stringent standards when facing a motion for summary judgment. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972); *see also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002).  Therefore, I find Plaintiff has presented genuine issues of material fact exist as to whether HCDC's policies regarding sick call procedures; emergency health care procedures; and detainee intake, custody and release procedures violated his constitutional rights as they relate to Plaintiff's claims of HCDC not employing a nurse or having sick call; not testing for Tuberculosis upon admittance to the HCDC; not having tuberculosis lights; housing Plaintiff with a tuberculosis infected inmate; and double bunking.

However, Plaintiff has failed to provide any facts supporting an official capacity claim regarding his other complaints—access to the courts; denial and delay of medical care as it relates to his medication, appointments with Dr. Patel, and bowels problem; and denial of religious freedoms. *See Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 690–91 & n. 55, 694 (1978) (plaintiff seeking to impose liability on local government body under Section 1983 must show official policy

or widespread custom or practice of unconstitutional conduct that caused a deprivation of constitutional rights).

Accordingly, I recommend that Separate Defendants' Motion for Summary Judgment (ECF No. 63) be **GRANTED** as to Plaintiff's denial of access to the courts; delay and denial of medical care as it relates to Plaintiff's medication, appointments with Dr. Patel, and bowels problems, and denial of religious freedoms claims against Separate Defendants in their official capacities. However, I recommend that Separate Defendants' Motion for Summary Judgment (ECF No. 63) be **DENIED** as to Plaintiff's claims regarding HCDC not employing a nurse or having sick call; not testing for tuberculosis; not having tuberculosis lights; housing Plaintiff with a tuberculosis infected inmate; and double bunking against Separate Defendants in their official capacities.

Furthermore, Plaintiff has failed to allege facts to support any individual capacity claims against Sheriff Morris. A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell,* 436 U.S. at 694. "[A] supervisor is not vicariously liable under 42 U.S.C. § 1983 for an employee's unconstitutional activity." *White v. Holmes,* 21 F.3d 277, 280 (8th Cir. 1994); *see also Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) ("general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability"). In other words, Sheriff Morris cannot be held liable merely because he supervises the individuals allegedly responsible for violating Plaintiff's constitutional rights. *Id.; see also Mark v. Nix,* 983 F .2d 138, 139–40 (8th Cir. 1993) (Section 1983 liability requires some personal involvement or responsibility). There is no allegation that Sheriff Morris was personally involved in any way in the events complained of by Plaintiff.

Accordingly, I recommend that Separate Defendants' Motion for Summary Judgment (ECF No. 63) be **GRANTED** as to Plaintiff's individual capacity claims against Sheriff Morris. Sheriff Morris should remain as a Separate Defendant in his official capacity only.

B.   <u>Access to the Courts</u>

As an initial matter, Plaintiff's claims—in the context of his access claim— that his conviction and sentence are invalid. Claims regarding the validity of his conviction and sentencing are not cognizable claims under *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that a claim for damages for "allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid" is not cognizable until "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. 486-87. Plaintiff's conviction has not be set aside or otherwise held to be invalid. Additionally, Plaintiff may not use the civil rights statutes as substitute for *habeas corpus* relief. In other words, he cannot seek declaratory or injunctive relief relating to his confinement and/or conviction. *See e.g.*, *Edwards v. Balisok*, 520 U.S. 641, 648 (1997); *Heck v. Humphrey*, 512 U.S. 477, 483-89 (1994); *Preiser v. Rodriquez*, 411 U.S. 475, 500 (1973) (*habeas corpus* is the exclusive remedy for prisoners attacking the validity of their conviction or confinement). Therefore, the Court will not address Plaintiff's claims regarding the validity of his conviction and sentencing.

The Court will, however, address Plaintiff's claim that Separate Defendants denied him access to the courts because the HCDC does not have a law library. Separate Defendants argue

8

that Plaintiff does not have the right to access to a law library in order to assist his attorney in defense of criminal charges.  Further, Plaintiff was given the opportunity to call family to bring his law books to the HCDC for his use.

Plaintiff responds that his lawyer only spoke to him about his charges on the day of court and allowed him to plead to charges had been revised or repealed in March 22, 2011.  Plaintiff claims he was coerced by his attorney to plead guilty and his sentence is illegal.  Finally, Plaintiff claims HCDC does not have a law library.

The Supreme Court has held that "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith,* 430 U.S. 817, 828 (1977).  Nevertheless, *Bounds* "did not create an abstract, freestanding right to a law library or legal assistance."  *Lewis v. Casey,* 518 U.S. 343, 351 (1996).  Instead, prison officials must provide inmates with "meaningful access to the courts," *Bounds,* 430 U.S. at 824, and providing a law library is merely one way to comply with this obligation.  *See Bear v. Fayram,* 650 F.3d 1120, 1123 (8th Cir. 2011) (the constitutional requirement of access to the courts may be satisfied in a number of ways including, prison libraries, jailhouse lawyers, private lawyers on contract with the prison, or some combination of these and other methods).  However, an inmate has no standing to pursue an access claim unless he can demonstrate that he suffered prejudice or actual injury as a result of the prison officials' conduct.  *See Lewis,* 518 U.S. at 351-2; *see also Farver v. Vilches,* 155 F.3d 978, 979-980 (8th Cir.1998) (per curiam); *Klinger v. Dep't of Corr.,* 107 F.3d 609, 617 (8th Cir.1997) (to prevail on an access-to-courts claim, inmate must show actual injury or prejudice even if denial of access to

library is complete and systematic); *McMaster v. Pung,* 984 F.2d 948, 953 (8th Cir. 1993). "To prove a violation of the right of meaningful access to the courts, a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *Hartsfield v. Nichols,* 511 F.3d 826, 831 (8th Cir. 2008) (citations omitted).

Plaintiff is not entitled to both adequate assistance of counsel and adequate access to a law library. *Bounds*, 430 U.S. at 828 ("the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law."); *United States v. Kind,* 194 F.3d 900, 905 (8th Cir.1999). The provision of adequate legal assistance to an inmate satisfies his access rights and relieves the prison from providing access to a law library. *Schrier v. Halford*, 60 F.3d 1309, 1313 (8th Cir. 1995). According to the Eighth Circuit, the term "adequate" as used in *Bounds* to modify "assistance from persons trained in the law" refers to the adequacy of the inmates access to counsel or other law-trained assistance. *Id.* (citing *Quam v. Minnehaha County Jail,* 821 F.2d 522, 523 (8th Cir. 1987) (per curiam) (regular access to a court-appointed attorney satisfies a Section 1983 plaintiff's access rights)).

It is undisputed that Plaintiff was appointed a public defender, La Jana Jones. Plaintiff claims, however, that his public defender was inadequate. This claim fails to state a cognizable access claim under Section 1983 as the adequacy at issue is not that of the appointed attorney but instead, the adequacy of Plaintiff's access to the appointed attorney. Plaintiff has not alleged that Separate Defendants denied him access to his public defender and therefore, his access claim must

fail.

Accordingly, I recommend that Separate Defendants' Motion for Summary Judgment (ECF No. 63) should be **GRANTED** as to Plaintiff's individual and official capacity access claims against Separate Defendants.

### C.   Medical Care

Plaintiff claims he was denied medical care when he was denied his medications (ECF No. 6, p. 2); refused doctor appointments completely or for "several weeks" (ECF No. 1, pp. 4, 6; ECF No. 6, p. 2); and refused a colon exam at Texarkana Gastroenterology Consultants.  (ECF No. 1, p. 5).

Separate Defendants argue that neither Administrator Tallant nor Sheriff Morris were deliberately indifferent to Plaintiff's medical needs.  Further, Plaintiff was not denied his medication nor medical care.  Separate Defendants did not dispute that Plaintiff suffered from objectively serious medical needs while incarcerated at HCDC.  Therefore, the Court focuses on the deliberate indifference prong of the denial of medical care standard.

The Eighth Circuit analyzes both a pretrial detainee's and a convicted inmate's claim of inadequate medical care under the deliberate indifference standard.  *See Butler v. Fletcher,* 465 F .3d 340, 344 (8th Cir. 2006).  To prevail on an Eighth Amendment claim, Plaintiff must prove that Separate Defendants acted with deliberate indifference to his serious medical needs.  *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).  The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'"  *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany*

*v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

"For a claim of deliberate indifference, the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation.  Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

It is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citations omitted).  An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment."  *Id.* Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference.  *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976).  However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009).  The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record. *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005).  However,

when the need for medical attention is obvious to a layperson, the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub v. VonWald,* 638 F.3d 905, 919 (8th Cir. 2011) (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999); *Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

Deliberate indifference can also be established by showing necessary medical treatment is delayed for non-medical reasons such as to compel payment. *See e.g., Fields v. Gander*, 734 F.2d 1313, 1314-15 (8th Cir. 1984) (the delay of access to dental care for an infected tooth for three weeks in order to compel payment of previous bill could constitute Eighth Amendment violation); *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3rd Cir. 1987) (prison officials may not condition medical treatment on the inmate's ability or willingness to pay).

### i.   Denial of medication

In his Complaint and Brief in Support, Plaintiff complains that he was denied medication but he does not indicate any specific medication he was denied.  The record reflects Plaintiff received several different types of  medication everyday from June 3, 2011 until he was released on June 30, 2011.  ECF No. 64, Ex. C.  Administrator Tallant states in her affidavit that Plaintiff was provided his prescribed medications while incarcerated at the HCDC.  ECF No. 64, Ex. M. Plaintiff did not respond to this evidence pointing to specific facts in the record to create issues for trial as to whether he was denied his prescribed medication.

Accordingly, I recommend that Separate Defendants Motion for Summary Judgment (ECF No. 63) be **GRANTED** as to Plaintiff's denial of medical care claims—as it relates to Plaintiff's medication—against Separate Defendants in both their individual and official capacities.

13

ii.     Denial or delay of doctors appointments with Dr. Patel

The record reflects that Plaintiff filed several requests to see a doctor and several grievances regarding both his "gout arthritis" during his month long incarceration at the HCDC.  On June 8, 2011, Plaintiff complained of his gout pain twice.  ECF No. 64, Ex. E.  Administrator Tallant contacted the Howard County Ambulance Service and was informed there is nothing the emergency room could do for gout.  Administrator Tallant then called the Howard Memorial Hospital and spoke with a nurse that advised to give Plaintiff another one of his Tramadol. Plaintiff was monitored through the night.  ECF No. 64, Ex. D.  On June 18, 2011, Plaintiff requested to "go back to see doctor Patel" because his arthritis was still hurting and he had "other problems."  Administrator Tallant noted on Plaintiff's request: "Dr. Patel 6/23/11 [at] 11:30."  ECF No. 64, Ex. L.  Plaintiff submitted three forms on June 20, 2011 about a request to see Dr. Patel and also requesting to see his family doctor, Dr. Parker in Hope, Arkansas.  Plaintiff requested the appointment with Dr. Patel because he was "hurting all over" and still having the "bowels problem."  Administrator Tallant noted on all three forms that an appointment was already made. ECF No. 64, Ex. L.  Finally, on June 23, 2011, Plaintiff filed a request asking to go visit Dr. Patel or his family doctor, Dr. Parker.  Administrator Tallant responded, "Dr. Appt made . . . ."  ECF No. 64, Ex. L.  According to the Affidavit of Administrator Tallant, Plaintiff was seen by a medical doctor on June 10, 2011 for complaints of a gout flare up and again on June 23, 2011 for arthritis complications.  ECF No. 64, Ex. M.

Plaintiff does not dispute that he visited Dr. Patel twice while incarcerated at the HCDC. He does, however, claim his medical care from Dr. Patel was delayed.  In his Brief in Support of Complaint, Plaintiff claimed it took "several weeks" to see a doctor.  ECF No. 6, p. 2.  In his

14

Response, Plaintiff argues that the issue—relating to his care by Dr. Patel—is why it "took from June 2, 2012 to June 23, 2012" to take him to see a doctor.  ECF No. 69, p. 8.  Later in the Response, Plaintiff states that it took Separate Defendants a long time to get him to Dr. Patel. Specifically, from June 2, 2011 until June 6, 2011 and then from June 11, 2011 to June 23, 2011.[5] ECF No. 69, p. 11.  Plaintiff also states in his Response that it took Administrator Tallant eighteen (18) days to provide Plaintiff with treatment for his gout arthritis.  ECF No. 69, p. 12.  Therefore, Plaintiff's claim—as it relates to the visits with Dr. Patel for his gout arthritis—is not one for denial of medical care but instead for delay of medical care.

Plaintiff states in his Brief in Support of Complaint, that when he was finally taken to see Dr. Patel he "had to hobble to the car, and to the doctor's office: my [gout arthritis] flared up so bad I was given Hydrocodine."  ECF No. 6, p. 2.  As mentioned above, Separate Defendants do not content that Plaintiff failed to show he suffered from a serious medical condition.  Considering Plaintiff's requests and grievances along with the fact that he was "hobbling," I find there are issues of fact as to whether Plaintiff's need for medical treatment was obvious to Administrator Tallant as a layperson, and whether Administrator Tallant was deliberately indifferent to such a need.  Additionally, the parties dispute the length of the delay in treatment from Dr. Patel. Therefore, the Court finds there are genuine issues of material facts in dispute as to Plaintiff's delay of medical care claim regarding his "gout arthritis" treatment from Dr. Patel.

---

[5] The Court recognizes the inconsistency in Plaintiff's date references with regard to his appointments with Dr. Patel.  Given the fact that Plaintiff was only incarcerated in the HCDC during the month of June 2011, the Court will presume that Plaintiff's reference to 2012 was inadvertent and adopt his allegations regarding the June 2011 dates.  *See Haines v. Kerner,* 404 U.S. 519, 520 (1972); *see also Lomholt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002) (*pro se* pleadings should be liberally construed and held to less stringent standards when facing a motion for summary judgment).

Accordingly, I recommend that Separate Defendants Motion for Summary Judgment (ECF No. 63) be **DENIED** as to Plaintiff's delay of medical care claim—as it relates to Plaintiff's visits with Dr. Patel for his gout arthritis—against Administrator Tallant in her individual capacity.

iii.   Denial of colon exam

Plaintiff mentioned his scheduled colon exam in a Request for Medical Treatment submitted on June 8, 2011.  ECF No. 64, Ex. E.  On June 13, 2011, Plaintiff submitted a Request for Medical Treatment stating he was "passing blood in [his bowel] movement" and requesting to go to his colon test at a doctor in Texarkana on Moores Lane.  Plaintiff also stated in this request that he had this problem since 2005.  Administrator Tallant noted on the form: "Allowed [Plaintiff] to use department phone 6-14-11 [at] 9:10 am to call family to get the doctor's name and phone number to confirm appointment date and time so we could get him there."  ECF No. 64, Ex. F. On June 15, 2011, Administrator Tallant made a note that she spoke with Texarkana Gastrenterology Consultants ("TGC") and was advised that Plaintiff previously scheduled two appointments in April and May (presumably 2011) but canceled both without rescheduling. Administrator Tallant was informed that Plaintiff had never seen a doctor at TGC.  ECF No. 64, Ex. H.  On June 17, 2011, TGC faxed Administrator Tallant with an appointment for Plaintiff, scheduled for June 28, 2011.  In the June 20, 2011 Officer's Notes, Administrator Tallant noted that she informed Plaintiff that HCDC would provide transportation to TGC for his appointment, but Howard County would not pay for the visit.  Plaintiff signed these Officer's Notes.  ECF No. 64, Ex. J.  However, on June 21, 2011, TGC sent Administrator Tallant a letter stating they are not contracted with HCDC to see inmates, and called to inform Administrator Tallant that they would not see Plaintiff while he was incarcerated.  ECF No. 64, Ex. K.  On June 20, 2011,

Plaintiff also submitted an Inmate Request Form to see Dr. Patel again.  He stated he was still having "that bowel's problem."  ECF No. 64, Ex. L.  On June 21, 2011, Plaintiff filed two Inmate Grievance Reports complaining about Administrator Tallant and Sheriff Morris refusing to pay for his colon exam, and he stated he would "just have to see doctor Patel again see if he can help me . . . ."  ECF No. 64, Ex. L.

"Inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment."  *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997).  However, there is no evidence in the record that Plaintiff received any medical treatment for his bowels problem or that Dr. Patel exercised any medical judgment regarding Plaintiff's bowels problem.  According to Administrator Tallant's affidavit, Plaintiff was seen by Dr. Patel for his gout and arthritis (ECF No. 64, Ex. M) and Plaintiff states in his Response that "the doctor I saw was not [equipped] for my colon problem" (ECF No. 69, p. 11).  Therefore, I find there are material issues of fact as to whether Plaintiff's was denied medical care regarding his bowels problem.

Accordingly, I recommend that Separate Defendants Motion for Summary Judgment (ECF No. 63) be **DENIED** as to Plaintiff's delay of medical care claim—as it relates to Plaintiff's bowels problem—against Administrator Tallant in her individual capacity.

   D.   <u>Freedom of religion</u>

In his Complaint, Plaintiff claims that his First Amendment rights were violated when he was denied access to a chaplain because HCDC does not have one.  Separate Defendants argue that Plaintiff was not denied access to a chaplain.

The record reflects that, on June 14, 2011, Plaintiff filed an Inmate Request Form

17

requesting to see a chaplain.  ECF No. 64, Ex. 16.  Plaintiff also filed a grievance form on the same day complaining about HCDC not having a chaplain.  Administrator Tallant explained to Plaintiff that a pastor comes to HCDC every Tuesday for worship, and if Plaintiff wanted to see the pastor any time other than Tuesdays, he needed to fill out a request to do so.  ECF No. 64, Ex. O.  In her affidavit, Administrator Tallant states she is unaware of any requests from Plaintiff after June 14, 2011 to see the chaplain.  ECF No. 64, Ex. M.

        "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution." *Turner v. Safley,* 482 U.S. 78, 84 (1987). "Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348 (1987) (internal citations omitted).

        This right, however, is not without limitation. The Supreme Court has recognized that "incarceration brings about the necessary withdrawal or limitation of many privileges and rights." *Id.* at 348. "The free exercise right is limited insofar as a prisoner's adherence to religious practices may be regulated by prison authorities, so long as such regulations are 'reasonably related to legitimate penological interests.'" *Murphy v. Carroll,* 202 F. Supp.2d 421, 424 (D. Md. 2002) (quoting *Turner,* 482 U.S. at 89).  "A prisoner need not be afforded his preferred means of practicing his religion as long as he is afforded sufficient means to do so." *Murphy v. Missouri Department of Corrections,* 372 F.3d 979, 983 (8th Cir. 2004).

        In analyzing a First Amendment free exercise claim, the court first addresses the "threshold issue of whether the challenged governmental action 'infringes upon a sincerely held religious belief,' and then appl[ies] the *Turner* factors to determine if the regulation restricting the religious practice is 'reasonably related to legitimate penological objectives.'" *Murphy,* 372 F.3d at 983

18

(quoting *Hamilton v. Schriro,* 74 F.2d 1545, 1550 (8th Cir. 1996); *O'Lone*, 482 U.S. at 353).
"Prison regulations that infringe on the constitutional rights of prisoners are judged by their
reasonableness. Prison officials are not required to choose the least restrictive means possible in
furthering administrative interests." *Salaam v. Lockhart,* 905 F.2d 1168, 1170 (8th Cir. 1990).

In *Turner,* the Court set forth a reasonableness test consisting of four factors used to
balance an inmate's free exercise right and the prison's legitimate correctional goals and security
concerns. Specifically, the court considers: (1) whether there exists a rational connection between
the prison policy or regulation and a legitimate governmental interest advanced as its justification;
(2) whether there are alternative means of exercising the right notwithstanding the policy or
regulation; (3) what effect accommodating the exercise of the right would have on guards, other
prisoners, and prison resources generally; and (4) whether there are ready, easy-to-implement
alternatives that would accommodate the prisoner's rights. *Turner,* 482 U.S. at 89–91.

Plaintiff argues in his Response that he is a "black [male]" and the only worship at the
HCDC is Christianity.  ECF No. 69, p. 10.  Plaintiff goes on to allege that by not offering other
types of worship the HCDC denies inmates access to worship.  Additionally, Plaintiff alleges that
the HCDC does not have a chapel, and the inability to worship in private violates inmates First
Amendment rights.

Plaintiff's allegations in his Response do not dispute Administrator Tallant's affidavit that
Plaintiff was not denied access to the chaplain. Instead, Plaintiff challenges the fact that the HCDC
only offers Christian worship and has no chapel.  Plaintiff does not allege, anywhere on the record,
that he practices a religion other than Christianity, nor does he state he requested and was denied
private worship time.  Therefore, Plaintiff has failed to point to specific facts in the record creating

19

a genuine issue of fact as to whether he was denied his right to exercise religion.

Accordingly, I recommend that Separate Defendants Motion for Summary Judgement (ECF No. 63) be **GRANTED** as to Plaintiff's exercise of relgion claim against Separate Defendants in both their official and individual capacities.

## IV.    CONCLUSION

For the reasons stated, I recommend that Separate Defendants' Motion for Summary Judgment (ECF No. 63) be **GRANTED** in part and **DENIED** in part. Specifically, the Motion should be granted with respect to Plaintiff's (1) access claims against Separate Defendants in both their individual and official capacities; (2) denial of medical care claims—relating to Plaintiff's medication—against Separate Defendants in both their individual and official capacities (3) delay and denial of medical care claims—relating to Plaintiff's appointments with Dr. Patel for his gout arthritis, and his bowels problems—against Separate Defendants in their official capacities and Sheriff Morris in his individual capacity; (4) fee exercise claims against Separate Defendants in both their individual and official capacities.  This leaves for later resolution Plaintiff's (1) official capacity claims regarding HCDC failing to employ a nurse, failing to test for tuberculosis, failing to have tuberculosis lights, housing Plaintiff in a cell with a tuberculosis infected inmate, and double bunking; (2) delay and denial of medical care—as it relates to his appointments with Dr. Patel for his gout arthritis, and his bowels problem—against Administrator Tallant in her individual capacity.  Further, I recommend the Clerk be directed to note on the docket that Sheriff Morris remains as a Separate Defendant in his official capacity only.

**The parties have fourteen days from receipt of the amended report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The**

**failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 11th day of September 2012.

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE