IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

WILLIE MUNN                                                                                              PLAINTIFF

V.                                         CIVIL NO. 4:11-cv-04085

SHERIFF BUTCH MORRIS; and
JANA TALLANT                                                                                          DEFENDANTS

**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

This is a civil rights action filed by Plaintiff, Willie Munn, pursuant to the provisions of 42 U.S.C. § 1983.  Plaintiff proceeds *pro se* and *in forma pauperis*.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a report and recommendation.  Plaintiff has requested a jury trial.  An evidentiary hearing was held on May 9, 2013 to determine whether there are any issues triable to a jury in this matter.

Plaintiff is currently incarcerated in Arkansas Department of Corrections Cummins Unit in Grady, Arkansas.  The events at issue in this case occurred while Plaintiff was incarcerated in the Howard County Detention Center ("HCDC").  Specifically, Plaintiff maintains Defendants subjected him to tuberculosis, double bunking, and denied him medical care.

I.   **BACKGROUND AND EVIDENCE**

In his Complaint, Plaintiff made multiple allegations against multiple Defendants.  Most of those claims, however, were dismissed at the summary judgment stage of this proceeding.  ECF No. 74.  On May 9, 2013, evidence was heard on the remaining claims including: (1) official capacity claims against Defendants Butch Morris and Jana Tallant relating to the HCDC failing to employ

a nurse, failing to test for tuberculosis or have tuberculosis lights, housing Plaintiff with a tuberculosis infected inmate, and double bunking; and (2) denial of medical care claims against Defendant Tallant relating specifically to appointments for Plaintiff's gout and "bowels problems."

At the evidentiary hearing, the testimony of the following witnesses was heard: (1) Plaintiff Willie Munn; (2) Defendant Butch Morris; (3) Defendant Jana Tallant; (4) Eric Wakefield; (5) DeWanda Schwope; (6) Hector Cortez; and (7) Tracy Evans. For purposes of this Report and Recommendation, the testimony of the witnesses will be briefly summarized.

**Plaintiff Willie Munn**

Plaintiff was arrested and booked into the HCDC on June 2, 2011, and was released on bond on June 30, 2011. *See* Pl.'s Ex. 1. Plaintiff testified he submitted his first sick call request on June 5, 2011 complaining of his toes and feet swelling and going numb. Plaintiff, however, was unable to submit the June 5, 2011 sick call request into evidence. The first sick call request in the record is dated June 8, 2011. *See* Pl.'s Ex. 1. Plaintiff saw Dr. Patel on June 10, 2011 and received pain medication at that time.

Plaintiff also testified his medical care was delayed for twenty-three days because he put in seven additional sick call request but was not taken to see Dr. Patel again until June 23, 2011. The evidence shows Plaintiff submitted additional sick call requests on: (1) June 13, 2011 complaining of blood in his stool and stating he had an appointment with a gastroenterologist in Texarkana for this problem; (2) June 18, 2011 requesting a return visit to see Dr. Patel because his gout was still hurting; and (3) June 20, 2011 requesting to see Dr. Patel and his family doctor and stating only that he was a sick man. *See* Pl.'s Ex. 1. Further, Plaintiff testified Defendants denied him medical care because Dr. Patel never treated him for his bowels problem and he was not transported to his

2

gastroenterologist appointment. Plaintiff also testified he told Dr. Patel about his bloody stool but Dr. Patel did not treat him for this complaint. Additionally, Plaintiff testified he was denied medical care because there was no sick call procedure or nurse on staff at the HCDC

Plaintiff also testified that Dr. Samad, who examined Plaintiff while he was an inmate at the Arkansas Department of Corrections ("ADC"), discovered plaintiff had a bleeding ulcer and polyps in his colon. According to the Operative Report from the colonoscopy Dr. Samad performed on Plaintiff in April 2013, no active bleeding was observed in the ulcer discovered but four to five polyps were discovered. *See* Pl.'s Ex. 3.

Regarding his tuberculosis related claims Plaintiff testified he does not have tuberculosis but was housed in a cell with a cell mate with tuberculosis.

Plaintiff also testified by claiming the HCDC had double bunking he meant that the HCDC had bunk style beds (one on top of the other) in each cell. Plaintiff is not alleging that the HCDC was overcrowded.

**Defendant Butch Morris**

Butch Morris is the Sheriff of Howard County and held the same position in June 2011. Sheriff Morris testified in June 2011 he was responsible for the inmates in the HCDC and the jail administrator of the HCDC. Sheriff Morris also testified there is no licensed nurse on staff at the HCDC and the HCDC does not have an initial healthcare screening procedure when inmates are booked into the jail other than a form the inmate fills out himself.

Further, Sheriff Morris testified the HCDC does have a sick call procedure where an inmate gives his request form to a jailer, the jailer then turns the request form into the jail administrator, and the jail administrator contacts the doctor that works with the HCDC to schedule an

appointment. Dr. Patel is the doctor that provides healthcare services to the HCDC. Lastly, Sheriff Morris testified he could not specifically remember speaking with Plaintiff in June 2011 but he does not doubt that Plaintiff informed him he was sick.

**Defendant Jana Tallant**

Jana Tallant is the current jail administrator at the HCDC and held the same position in June 2011. Administrator Tallant testified Plaintiff was booked on June 2, 2011, she received Plaintiff's first medical request on June 8, 2011, and Plaintiff was seen by Dr. Patel on June 10, 2011.

Administrator Tallant testified Plaintiff informed her he was sick on June 13, 2011 by stating he was passing blood from his rectum, however, at this time Plaintiff informed her he had an appointment with a Gastroenterologist for this issue. Administrator Tallant also testified she did not have Plaintiff transported to his appointment with the gastroenterologist on June 28, 2011 because, on June 21, 2011, the gastroenterologist office informed her they would not see Plaintiff while he was incarcerated. *See* Pl.s' Ex. 1.

On a June 20, 2011, Administrator Tallant made an "Officer's Notes" entry into Plaintiff's jail file. On that note, Administrator Tallant indicated she did not know who made the gastroenterologist appointment for Plaintiff, but she informed the gastroenterologist office that the HCDC would provide Plaintiff transportation to his appointment but would not be responsible for paying for the visit. *See* Pl.'s Ex. 1. On June 21, 2011, Administrator Tallant made another Officer's Note in Plaintiff's jail file indicating the gastroenterologist office called and informed her they would not see Plaintiff while he was incarcerated. *See* Pl.'s Ex. 1. Further, Administrator Tallant testified that once the gastroenterologist office canceled Plaintiff's appointment, she

scheduled Plaintiff an appointment with Dr. Patel.  Plaintiff was seen by Dr. Patel on June 23, 2011.

The records from Dr. Patel's office indicate Plaintiff complained of blood in his stool at his June 23, 2011 visit with Dr. Patel.  *See* Pl.'s Ex. 5.  It is unclear from the medical record what treatment Dr. Patel provided Plaintiff[1], however, it is clear that Plaintiff was seen by Dr. Patel on June 23, 2011 for a complaint of blood in his stool.  *Id.*

Lastly, Administrator Tallant testified the HCDC is responsible for paying for medical care if the HCDC schedules the appointment, but if the appointment is not scheduled through the HCDC sickcall process, the HCDC will not pay for the appointment.

**Eric Wakefield**

Eric Wakefield was the Chief Deputy Sheriff for Howard County in June 2011.  Wakefield testified he remembers transporting Plaintiff to doctors appointments from the HCDC over the years.  Wakefield could not remember any specific dates of transport or any specifics of Plaintiff's medical condition during those transports.

**DeWanda Schwope**

DeWanda Schwope was a jailer and dispatcher at the HCDC in June 2011.  Schwope testified she remembers Plaintiff turning in a medical request but she did not remember talking to Plaintiff regarding his gout or that he could not walk.

**Hector Cortez**

Hector Cortez was a jailer and dispatcher at the HCDC in June 2011.  Cortez testified he

---

[1] Dr. Patel's hand written notes of the treatment prescribed for Plaintiff on June 23, 2011 are illegible.  Plaintiff, however, testified that Dr. Patel did not treat him for his bowels problem.

remembers Plaintiff asking for medical requests but he does not remember why Plaintiff needed the request or that Plaintiff suffered from gout. Cortez did sign Administrator Tallant's June 20, 2011 Officer's Note as a witness. *See Pl.'s Ex.* 1.

**Tracy Evans**

Tracy Evans was Plaintiff's cell mate in the HCDC in June 2011. Evans testified the HCDC had "double bunks."

Evans also testified at some point he watched "Officer Jack" push Plaintiff out of the HCDC in a rolling chair. Officer Jack Manlove completed an officer note for Plaintiff's file on June 8, 2011. In this note, Officer Manlove noted Plaintiff asked him to call Emergency management services to transport him to the emergency room for his gout flare up. Officer Manlove contacted the Howard County Ambulance Service who advised him there was nothing the emergency room could do for gout. Officer Manlove then contacted the nurse on duty at Howard Memorial Hospital who advised Officer Manlove to give Plaintiff another one of his Tramadol and monitor him through the night. *See* Pl.'s Ex. 1.

Regarding his tuberculosis Evans gave conflicting testimony. Evans first testified he had tuberculosis while housed in the HCDC, but he took medication meant to keep the tuberculosis dormant during that time. Then Evans testified he was not diagnosed with tuberculosis until after he left the HCDC in 2011. Later Evans testified that he received a negative tuberculosis test before entering the Arkansas Department of Corrections from the HCDC. Finally, Evans testified he ran out of tuberculosis medication while housed with Plaintiff at the HCDC.

**II. DISCUSSION**

As an initial matter, the Court must address several references Plaintiff made during the

6

May 9, 2013 hearing to the Court's September 11, 2012 Report and Recommendation on Defendants' Motion for Summary Judgment. Plaintiff quoted statements made by the Court in that Report and Recommendation as if such statements were findings of fact. While the Court recognizes that it did make statements in the Report and Recommendation regarding facts in dispute, those statements are in no way findings of fact. At the summary judgment stage the Court is tasked with determining whether there are any genuine disputes as to any material fact. *See* Fed. R. Civ. P. 56(a). Additionally, at the summary judgment stage the Court must view all evidence and inferences in a light most favorable to the nonmoving party, here the Plaintiff. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). No statement in the Court's September 11, 2012 Report and Recommendation should be construed as an adoption of Plaintiff's alleged facts. Further, in the instant Report and Recommendation the Court again is not making findings of fact, but instead, enumerating the evidence presented at the evidentiary hearing and recommending to the district judge whether Plaintiff has claims, supported by evidence, that are triable to a jury. *See* Local Rule 72.1.

      The Court also notes that Plaintiff filed Objections to Evidence submitted at the Evidentiary Hearing on the docket in this matter on May 21, 2013 (ECF No. 122), and also a Supplement to these Objections (ECF No. 123). Defendants responded to Plaintiff's Supplement. ECF No. 124.

      The Court did not consider Plaintiff's objections in making the instant Report and Recommendation because all evidence submitted at the evidentiary hearing was submitted by Plaintiff. Plaintiff may not submit evidence to the Court at the hearing and then after the close of evidence object to the very evidence he submitted.

      Furthermore, in Plaintiff's Supplement to his Objections to Evidence he accuses Defendants

and their counsel of perjury and evidence tampering relating to Plaintiff's medical records from Dr. Patel's office submitted by Plaintiff as Exhibits 5 and 6. ECF No. 123. Allegations of this type are serious and not taken lightly by the Court, however, here the allegations have no veracity. The Court subpoenaed Dr. Patel's medical records on behalf of Plaintiff. ECF No. 119. In response, Dr. Patel sent the subject records directly to the Court and the Court then delivered a copy directly to Plaintiff and a separate copy directly to Defendants' counsel. At no time were the original records from Dr. Patel in the possession of Defendants or Defendants' counsel prior to the Court delivering them to Plaintiff. Accordingly, Plaintiff's arguments in his Supplement to his Objections are meritless.

    A.    Official Capacity Claims

Plaintiff claims Defendants violated his constitutional rights in their official capacities by failing to employ a nurse, failing to test for tuberculosis, failing to have tuberculosis lights in the HCDC, housing Plaintiff with a tuberculosis infected inmate, and double bunking inmates.

Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both. In *Gorman v. Bartch,* the Eighth Circuit Court of Appeals ("Eighth Circuit") discussed the distinction between individual and official capacity suits. As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24–27, 112 S.Ct. at 361–62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25–27, 112 S.Ct. at 362.

8

*Gorman,* 152 F.3d 907, 914 (8th Cir.1998). "[R]igorous standards of culpability and causation must be applied to ensure that the [county] is not held liable solely for the actions of its employee" in cases where a plaintiff claims a county has caused an employee to violate the plaintiff's constitutional rights. *Board of County Commissioners, Oklahoma v. Brown,* 520 U.S. 397, 405 (1997).

        i.      <u>No nurse on duty</u>

Plaintiff testified that he was denied or delayed medical care because the HCDC did not employ a nurse at the facility. As discussed in detail below, the evidence indicates Plaintiff was not denied medical care and any delay in his medical care does not amount to deliberate indifference. Therefore, not having a nurse on duty at the HCDC could not have violate Plaintiff's constitutional rights by denying him or delaying his medical care.

Further more, the HCDC policy on sick call reads in pertinent part: "Detainees shall be provided access to necessary health care through a routine sick call procedure. Sick call shall be conducted by a licensed medical professional. No employee or official of the county shall interfere with a detainees['] access to sick call." *See* Pl.'s Ex. 2. Additionally, Sheriff Morris testified the sick call procedure at the HCDC consisted of the inmate completing a written medical request, giving that medical request to a jailer, the jailer giving the medical request to Administrator Tallant, Administrator Tallant calling and scheduling an appointment for the inmate with Dr. Patel, and finally, Administrator Tallant arranging transportation to the appointment. The written policy of the HCDC supports Sheriff Morris's testimony. *See* Pl.'s Ex. 2.

In Plaintiff's case the stated HCDC policy was followed by Defendants and as discussed in detail below, the evidence indicates it did not result in the denial of medical care and any delay

9

in medical care does not evidence deliberate indifference. Accordingly, there are no issues triable to a jury relating to Plaintiff's official capacity claims against Sheriff Morris and Administrator Tallant for failing to employ a nurse at the HCDC.

> ii.     Tuberculosis

All of Plaintiff's tuberculosis related claims are analyzed under the deliberate indifference standard of the Eighth Amendment because he is essentially claiming that prison officials unconstitutionally ignored a serious medical need or failed to protect him from a serious risk of harm by failing to test for tuberculosis and exposing him to a cell mate with tuberculosis. *See Butler v. Fletcher,* 465 F.3d 340, 345 (8th Cir. 2006). The deliberate indifference standard includes both an objective and a subjective component. *See Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)). The objective component of the deliberate indifference standard in cases regarding tuberculosis exposure "requires proof that [Plaintiff] was exposed to ... inmates with active TB cases in a manner that created an unreasonable risk of serious harm to his health." *Butler,* 465 F.3d at 345 (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). Further, the subjective component of the deliberate indifference standard requires proof that the jail official "actually knew of and recklessly disregarded this substantial risk of serious harm." *Id.* (quoting *Pietrafeso v. Lawrence County, S.D.,* 452 F.3d 978, 983 (8th Cir. 2006)). Lastly, the subjective component will be negated by county policies showing acknowledgment of the risk of tuberculosis in a prison setting, and promulgated procedures for diagnosis, segregation, and treatment of infected inmates. *Id.*

There was no testimony or other evidence offered regarding the policies and procedures of the HCDC regarding tuberculosis. Plaintiff testified he does not have tuberculosis but was housed

in a cell with Tracy Evans who suffered from tuberculosis during that time. Tracey Evans, however, was unable to confirm whether he had active tuberculosis while housed with Plaintiff in the HCDC.

There is no evidence of a county police or custom that caused Plaintiff to be exposed to tuberculosis in a way that created an unreasonable risk of serious harm to his health. Further, Plaintiff testified that he did not suffer any injury relating to his tuberculosis claims. Compensatory damages cannot be awarded for the violation of a constitutional right alone, instead, there must be an actual injury resulting from the violation to warrant compensatory damages. *See Memphis Community School Dist. v. Stachura,* 477 U.S. 299, 307 (1986) ("[w]here no injury was present, no compensatory damages could be awarded.") (internal quotations omitted).

Accordingly, there are no issues triable to a jury relating to Plaintiff's official capacity claims against Sheriff Morris and Administrator Tallant regarding his tuberculosis claims.

### iii.    Double bunking

Plaintiff testified that his double bunking claim related to the fact that the HCDC had bunk style beds in each cell—one bed stacked on top of the other. Further, Plaintiff testified that his double bunking claim was not related to overcrowding and the HCDC was not overcrowded.

As this claim fails to state a cognizable claim under section 1983, there are no issues triable to a jury relating to Plaintiff's official capacity claims against Sheriff Morris and Administrator Tallant regarding his tuberculosis claims.

### B.    Denial or delay of medical care

The Plaintiff makes two separate claims regarding denial and/or delay of medical care. First, he claims Administrator Tallant delayed his medical care for his gout flare up for twenty-

11

three days. Second, he claims Administrator Tallant denied him medical care for his bowel problems completely.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med. Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

It is well settled that a "prisoner's mere difference of opinion over matters of expert medical

12

judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citations omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976). However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009). The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record. *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005). Unless, however, the need for medical attention is obvious to a layperson in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub v. VonWald,* 638 F.3d 905, 919 (8th Cir. 2011) (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *see also Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate is suffering, can support a finding of an Eighth Amendment violation").

    i.    <u>Gout flare up</u>

The evidence shows Plaintiff was not denied medical care relating to his gout flare up. At most Plaintiff's claim is one of delay of medical care for his gout flare up. The evidence supports a finding that Plaintiff's gout flare up constituted an objectively serious medical need as his foot was swollen and his toes were going numb. There is also evidence that upon Plaintiff's verbal complaint on June 8, 2011 that Officer Manlove, a layperson, found it necessary to call and see if Plaintiff needed to be transported to the emergency room for treatment of his gout. *See Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (an injury is objectively serious if it is so obvious that even a layperson would easily recognize the necessity for a doctor's attention). Therefore, the Court will proceed into an analysis of whether the evidence supports a finding of deliberate indifference on the part of Administrator Tallant.

Plaintiff testified he submitted his first sick call request on June 5, 2011. Therefore, five days elapsed between Plaintiff's first request for medical attention, on June 5, 2011, and his appointment with Dr. Patel on June 10, 2011. Administrator Tallant scheduled and arranged transportation for Plaintiff to his appointment with Dr. Patel. Further, the evidence shows that during the five day delay—from June 5 to June 10, 2011—Plaintiff was given the pain medication Tramadol everyday. *See* Pl.'s Ex. 1.

Also, Plaintiff submitted a sick call request on June 18, 2011 requesting to see Dr. Patel a second time regarding his gout. In response to this request, Administrator Tallant again scheduled Plaintiff an appointment with Dr. Patel on June 23, 2011. *See* Pl.'s Ex. 1. Administrator Tallant arranged transportation for Plaintiff to his second appointment with Dr. Patel. Further, during the five days between Plaintiff's second request and second visit with Dr. Patel—June 18 to June 23, 2011—Plaintiff was given the pain medication Tramadol everyday.

14

*See* Pl.'s Ex. 1.

There is no verifying medical evidence in the record to indicate Plaintiff suffered any detrimental effects from the two separate five day delays between his requests for doctors visits and his appointments with Dr. Patel. *See Laughlin,* 430 F.3d at 929 (the objective seriousness of a delay in treatment is measured by the effect of the delay). Further, Plaintiff was receiving pain medication every day during both of the five day delays. Therefore, based on the evidence presented, Administrator Tallant was not deliberately indifferent to Plaintiff's, medical needs. *See Johnson v. Hamilton,* 452 F.3d 967, 973 (8th Cir. 2006) (a delay of a month between a nurse's tentative diagnosis of inmate's fractured finger and the date the inmate was examined by a doctor and the finger x-rayed was not deliberate indifference and did not amount to anything more than negligence); *Logan v. Clarke,* 119 F.3d 647, 649-50 (8th Cir. 1997) (no deliberate indifference when the inmate was seen on multiple occasions and offered pain killers); *see also Christianson v. McLean County Sheriff's Dept.,* 2010 WL 3421083, at n. 2 (D. N.D. Aug. 3, 2010) (plaintiff's claim that he was not taken to the emergency room for treatment upon his demand but instead forced to submit to examination pursuant to the jail's procedures is nothing more than disagreement with medical treatment and brief delays in treatment, standing alone, do not give rise to section 1983 liability).

Lastly, there is no evidence or testimony to indicate Administrator Tallant was deliberately indifferent to Plaintiff's medical needs by intentionally interfering with or delaying Plaintiff's visits to Dr. Patel. *See Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997) ("Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment or by prison doctors who fail to

15

respond to prisoner's serious medical needs."); *see also Mayer v. Magill*, 978 F.2d 715 (9th Cir. 1992) (two separate delays in treating inmates gout—one for three days and the second for four days—did not amount to deliberate indifference because the plaintiff failed to show the defendant was actively responsible for the delays).  To the contrary it appears from the evidence that Administrator Tallant promptly scheduled Plaintiff an appointment with Dr. Patel each time he requested one.  *See* Pl.'s Ex. 1.

Accordingly, there are no issues triable to a jury relating to Plaintiff's individual capacity claim against Administrator Tallant regarding his delay of medical care for his gout.

### ii. Bowels Problem

Plaintiff claims he was denied medical care for his "bowels problem" (blood in his stool) because Administrator Tallant refused to transport him to his gastroenterologist appointment, Dr. Patel did not treat him for his bowels problem, and there was no licensed nurse on duty at the HCDC.  The evidence presented at the hearing does not support Plaintiff's claim of denial of medical care for his bowels problem.  There is no evidence that Administrator Tallant was deliberately indifferent to Plaintiff's bowels problem.

The evidence shows Administrator Tallant consistently worked to accommodate Plaintiff regarding his appointment with the gastroenterologist in Texarkana.  Plaintiff informed Administrator Tallant that he was passing blood in his stool on June 13, 2011.  On the same day, Plaintiff informed Administrator Tallant that he had a doctors appointment with a gastroenterologist in Texarkana for this problem.  On June 14, 2011, Administrator Tallant allowed Plaintiff to use the HCDC phone to call his family and get the gastroenterologist's name where he had the appointment scheduled.  On this same day, Administrator Tallant noted she would confirm

the appointment and transport Plaintiff to the appointment. *See* Pl.'s Ex. 1. Administrator Tallant testified she did not schedule Plaintiff an appointment with Dr. Patel at this time because she believed Plaintiff would be seen by the gastroenterologist at his scheduled appointment on June 28, 2011.

On June 21, 2011, Administrator Tallant was informed by the gastroenterologist's office that they would not see Plaintiff while he was incarcerated. On June 23, 2011, Plaintiff was taken to see Dr. Patel. While it is unclear what treatment Dr. Patel provided, it is clear that Plaintiff informed Dr. Patel of the blood in his stool. *See* Pl.'s Ex. 5.

The evidence from the hearing clarifies that Plaintiff's claim is not one of denial of medical care but instead one of denial of medical care from his chosen physician. Plaintiff testified he was denied medical care because he was not taken to the doctor of his choice (the gastroenterologist in Texarkana). Mere disagreement with treatment fails to state a claim of deliberate indifference. *See Meuir v. Greene Coutny Jail Employees*, 487 F.3d 1115, 1118-19 (8th Cir. 2007) (an inmate has no constitutional right to a particular course of treatment, and his mere disagreement with the medical treatment he receives is not a basis for section 1983 liability); *Pietrafeso v. Lawrence County, S.D.*, 452 F.3d 978, 983 (8th Cir.2006) (showing of deliberate indifference is greater than even gross negligence and requires more than mere disagreement with treatment decisions); *Vaughan v. Lacey*, 49 F.3d 1344, 1346 (8th Cir.1995) (claims that prison doctor refused to provide the same medication as the inmate's free world doctor prescribed amounted to nothing more than a disagreement as to the proper course of treatment which is not actionable under the Eighth Amendment).

Furthermore, it is inconsequential that Plaintiff disagrees with Dr. Patel's treatment of his

bowels problem because Dr. Patel is not named as a Defendant in this matter. Administrator Tallant scheduled and transported Plaintiff to Dr. Patel for treatment on June 28, 2011. There is no evidence that Plaintiff made any subsequent requests to Administrator Tallant complaining that Dr. Patel failed to treat him for his bowels problem. Administrator Tallant cannot be held liable for Dr. Patel's actions. *See Keeper v. King,* 130 F.3d 1309, 1314 (8th Cir. 1997) (a supervisor who is not involved in treatment decisions made by medical staff cannot be liable for the medical staff's diagnostic decisions). Additionally, as discussed above, Plaintiff's mere disagreement with Dr. Patel's treatment does not give rise to a section 1983 claim of denial of medical care. *See Meuir*, 487 F.3d at 1118-19.

Lastly, Plaintiff offered no evidence to show how the lack of an on duty nurse at the HCDC denied him medical care. Furthermore, as discussed above, the evidence does not support Plaintiff's claim that he was denied medical care.

Accordingly, there are no issues triable to a jury relating to Plaintiff's individual capacity claim against Administrator Tallant regarding his denial of medical care for his bowels problem.

### III. CONCLUSION

Accordingly, I find there are no issues of fact triable to a jury in this matter. Further, I recommend Plaintiff's official and individual capacity claims against Defendants Sheriff Morris and Administrator Tallant be **DISMISSED** with prejudice.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the**

**district court.**

**DATED** this **12th day of July 2013.**

                                            /s/ Barry A. Bryant
                                            HON. BARRY A. BRYANT
                                            UNITED STATES MAGISTRATE JUDGE